528 A.2d 672

Shenango, Inc., Petitioner *v.* Workmen's Compensation Appeal Board (Swan), Respondents.

Argued May 18, 1987, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Jerry S. McDevitt, Kirkpatrick & Lockhart,* for petitioner.

*Edwin Beachler,* with him, *Richard G. Spagnolli, Caroselli, Spagnolli & Beachler,* for respondent, Ralph Swan.

OPINION BY JUDGE CRAIG, July 7, 1987:

Shenango, Inc., the employer, appeals from an order of the Workmen's Compensation Appeal Board granting benefits to Ralph J. Swan, a claimant. We affirm.

According to the referee's findings of fact, Shenango had recently hired the claimant as a probationary employee at the time of his injury. On July 25, 1981, while working as a ladle cleaner, a weight fell on the claimant's hand and injured his left ring finger. The claimant returned to his ladle cleaning job on July 27, 1981 but experienced difficulty with his injured finger. His foreman then transferred the claimant to a pre-existing janitorial position in the company cafeteria. The claimant did not suffer a loss of earnings because of the transfer. On August 10, 1981, Shenango terminated the claimant's employment in the janitorial position.

On August 10, 1982, the referee stated the following "Conclusion of Law", actually, a finding:

4. Your Referee accepts in part the testimony of Dr. Marryshow and in part the testimony of Dr. Slater that the Claimant was disabled from performing his regular job as a ladle cleaner but that the Claimant was not disabled from performing a job as laborer cleaning the cafeteria which according to testimony of Ron Connol-

ly would have been available to him with no loss of earnings until he was released to return to a ladle cleaner on January 5, 1982.

The referee also expressed the following conclusion of law:

7. The Claimant in his Claim Petition has the initial burden of proving that he was disabled from performing his regular job as a ladle cleaner. The Claimant having met that burden, would be entitled to compensation benefits, however, Defendant then met its burden by showing that there was work available (the laborer job that involved cleaning the cafeteria) that the Claimant could perform without a loss of earnings.

The referee accordingly suspended the claimant's benefits.

The board, in an order dated June 2, 1983, remanded the case to the referee for additional findings of fact concerning the reason for the claimant's discharge from his employment on August 10, 1981.

On remand, the referee specifically found that Shenango terminated the claimant *not* because of a physical inability of the claimant to do his job, but because the employer wished to exercise its right to terminate claimant, a probationary employee, at will. The referee again ordered that compensation for the claimant be suspended.

The board, in a second appeal, entered an order as follows:

The Referee has found as fact that the Claimant lost his job for reasons unrelated to the physical injury. We however now feel the reason for the loss of the job is immaterial. See Palmiere vs. Workmen's Compensation Appeal Board, [91 Pa. Commonwealth Ct. 137], 496 A.2d 918 (1985).

If the Claimant cannot work because of the work injury, the Defendant must show work available the Claimant can perform. We therefore reverse the Referee and remand for the entry of an award.

Our scope of review is limited to a determination of whether there has been a constitutional violation, an error of law or whether the findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

Shenango argues that the board's legal conclusion that the reason for the claimant's job loss is immaterial is erroneous. Shenango also argues that the board exceeded its scope of review, contending that the board implicitly found as a fact that the claimant was terminated because of his injury and that Shenango could not offer work to the claimant which he could perform with his finger injured.

The board, generally, is bound by the referee's findings of fact; only where the referee's findings of fact are not supported by substantial competent evidence in the record may the board substitute its own findings. *Peer v. Workmen's Compensation Appeal Board (B & W Construction),* 94 Pa. Commonwealth Ct. 540, 503 A.2d 1096 (1986).

The referee initially made the following crucial findings of fact which he later incorporated into his decision after the remand hearing:

21. Your Referee finds the Medical Reports of Dr. Marryshow and Dr. Slater to be credible that the Claimant was disabled from performing his regular job as a ladle cleaner from August 10, 1981 thru January 4, 1982.

22. Your Referee also finds credible the report of Dr. Slater which indicates that the

Claimant was employable on a full time basis at work that did not involve the strenuous use of the left hand and, therefore, the Claimant was capable of performing a laborer job that involved the cleaning of the cafeteria.

23. Your Referee finds that there is no wage differential involved in the position of ladle cleaner to laborer as of August 1, 1981. . . .

After the remand hearing, referee Steiner made an additional finding regarding the claimant's termination:

6. Your Referee finds as a fact that the claimant was terminated on August 10, 1981 by the defendant not because of the physical inability of the claimant to do his job but rather because claimant was a probationary employee and the defendant wished to exercise its unilateral right to terminate the claimant since they were dissatisfied with the claimant's work. . . .

Close analysis of this case requires that the somewhat cryptic expressions of both the referee and the board be understood in light of the actual proofs in the record.

First, study of the testimony clarifies the referee's Finding No. 6 as *not* constituting a definite finding that the plaintiff was terminated from the light-duty job because of his own fault. Instead, the finding indicates that the employer's representatives exercised their "unilateral" right to discharge the claimant, a probationary employee, because they could do so at will and thus, as the testimony indicates, prevent him from acquiring tenure rights which would make a later discharge more difficult. In light of the record, the referee's finding, that the employer representatives "were dissatisfied with the claimant's work," can be understood for what it is, a statement of the subjective view of the foundry supervisor but not an objective finding of fact that the claim-

ant indeed did perform unsatisfactorily. The only testimony on this point in the record is that of an employer representative, not from the foundry, who, by hearsay, relayed the opinions of the foundry management; on a firsthand basis, he stressed only the desirability of discharging the employee before tenure rights accrued.

We note that the board stated:

If the claimant cannot work because of the work injury, the Defendant must show work available that claimant can perform.

The employer misconstrues that statement of the board by treating it as if the board disregarded the referee's finding as to the loss of the light-duty job and instead found that the claimant suffered a physical inability to perform that job. The board made no such finding. The word "If" signifies that the board was stating the general rule that the employer has the burden of showing that work is available to obviate a loss of earnings when a physical disability exists—here the physical inability to perform the original ladle cleaner job, which continued during the period in question in this case, between August of 1981 and January 5, 1982, when that physical disability ended.

The employer relies on *Woodard v. Workmen's Compensation Appeal Board,* 49 Pa. Commonwealth Ct. 558, 411 A.2d 890 (1980), in which this court upheld a suspension of benefits where the claimant's loss of earnings resulted from a discharge from his light-duty position on account of his own fault, his unexcused absences. In that case, the employer was not required to show the continuing availability of employment because the position in question obviously would have remained available, except for the claimant's fault.

In this case, the claimant's last position was light-duty work which the employer had shown to be available to the claimant when he was placed in it (Conclusion

of Law No. 7, August 10, 1982 referee's decision). However, availability status as to that job ceased when the employer unilaterally made it unavailable to the claimant by discharging him. At that point, with the claimant still physically unable to perform the original ladle-cleaner job, the employer had its usual burden to show the availability of work performable without a loss of earnings. When a partially disabled claimant has been laid off from a modified job while still unable to perform the time-of-injury job, the employer then again has the standard burden of proof, to show the availability of work which the claimant is capable of performing. *Smith v. Workmen's Compensation Appeal Board (Futura Industries)*, 80 Pa. Commonwealth Ct. 508, 471 A.2d 1304 (1984). *See also, Busche v. Workmen's Compensation Appeal Board*, 77 Pa. Commonwealth Ct. 469, 466 A.2d 278 (1983) where a claimant continued to be unable to perform his previous heavier work when the light-duty job was eliminated, and where the employer was held to the requirement of showing availability of work the claimant could perform.

Here the board correctly took note of *Palmiere v. Workmen's Compensation Appeal Board (East End Trucking)*, 91 Pa. Commonwealth Ct. 137, 496 A.2d 918 (1985), although neither that case nor any other provides support for the board's statement that "the reason for the loss of the job is immaterial" in these cases. The reason for the loss of the job can be quite material, as is illustrated by comparing the *Woodard* case, in which the light-duty job would have remained available except for worker's own fault, with *Busche* or with *Palmiere* where a light-duty job was eliminated because of economic factors.

We note further that whether or not the employer especially created the light-duty job can be material, but only because the need to develop a uniquely de-

signed job can suggest that suitable work is not otherwise available.

In summary, the present case is one in which the claimant remained unable to perform the original job until January 5, 1982. When the employer unilaterally acted in August of 1981 to bar the claimant from the light-duty position which had been providing equal earnings, the employer then faced, and failed to meet, the burden of showing that performable work was otherwise available. Hence the board's decision reversing the referee and directing an award for the period between the two named dates was well founded.

## ORDER

Now, July 7, 1987, the order of the Workmen's Compensation Appeal Board, at Docket No. A-87684, entered on February 19, 1986, is affirmed.

Judge PALLADINO concurs in the result only.